IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: ) | Chapter 11 |
| ) | |
| Peregrine I, LLC,[1] ) | Case No. 11-11230 (MFW) |
| ) | |
| Debtor. ) | |
| ) | |

### EMERGENCY MOTION OF THE DEBTOR FOR ENTRY OF (I) INTERIM ORDER (A) AUTHORIZING USE OF CASH COLLATERAL AND GRANTING ADEQUATE PROTECTION, (B) SCHEDULING A FINAL HEARING PURSUANT TO BANKRUPTCY RULE 4001, AND (C) GRANTING RELATED RELIEF, AND (II) A FINAL ORDER IN RESPECT THEREOF

Peregrine I, LLC, the debtor and debtor-in-possession (the "Debtor") in the above-captioned chapter 11 case (the "Chapter 11 Case"), hereby moves this Court (the "Motion"), pursuant to sections 105(a), 361, 362, 363(c), 363(e), and 507 of title 11 of the United States Code (the "Bankruptcy Code") and Rules 2002, 4001, and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and the corresponding local rules of this District (the "Local Rules"), for (i) the entry of an Interim Order, substantially in the form attached hereto as Exhibit A (the "Interim Order"): (a) authorizing the Debtor, pursuant to sections 105, 361, 362, 363(c), 363(e) and 507 of the Bankruptcy Code, to use Cash Collateral (as defined herein) and provide adequate protection to the Prepetition Secured Parties (as defined below), and (b) scheduling a hearing (the "Final Hearing") on final authorization to use Cash Collateral and approving the form and matter of notice, and (ii) the entry of a final order (the "Final Order" and together with the Interim Order, the "Cash Collateral Orders") approving use of Cash Collateral on a final basis, pursuant to section 363 of the Bankruptcy Code. The facts and circumstances supporting this Motion will be set forth in the *Affidavit of John W. Hanlon in*

---

[1] The last four digits of the Debtor's taxpayer identification number are 7108. The address of the Debtor is Maples Corporate Services Limited, P.O. Box 309, Ugland House, Grand Cayman, KY1-1104, Cayman Islands.

*Support of the Emergency Motion of the Debtor for Entry of (I) Interim Order (A) Authorizing Use of Cash Collateral and Granting Adequate Protection, (B) Scheduling a Final Hearing Pursuant to Bankruptcy Rule 4001, and (C) Granting Related Relief, and (II) a Final Order in Respect Thereof* (the "Hanlon Affidavit") to be filed prior to the interim hearing on this Motion. In further support of this Motion, the Debtor respectfully states as follows:

## JURISDICTION

1. This Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157(b) and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). Venue of this proceeding and this Motion is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

2. The relief sought in this Motion is based upon sections 105, 361, 362, 363 and 507 of the Bankruptcy Code; Bankruptcy Rules 2002, 4001 and 9014; and the corresponding Local Rules.

## RULE 4001 CONCISE STATEMENT

3. Pursuant to and in accordance with Bankruptcy Rule 4001(b)(1)(B) and Rule 4001-2(a)(ii) of the Local Rules, the material provisions of the Interim Order, and the location of such provisions therein, are as follows:[2]

> (i) <u>Name of Each Entity with an Interest in Cash Collateral</u>. (i) WestLB AG, New York Branch, as Agent and Security Trustee under the Prepetition Credit Agreement and (ii) the Prepetition Secured Parties. Interim Order, ¶ 4(e).
>
> (ii) <u>Use of Cash Collateral</u>. Subject to the terms of the proposed Interim Order, the Debtor shall be authorized to use all Cash Collateral of the Prepetition Secured Parties (i) solely in accordance with and pursuant to the terms and provisions of the Interim Order and (ii) only to the extent authorized to pay those expenses enumerated in the Budget as and when

---

[2] This summary is qualified in its entirety by the provisions of the Interim Order. Capitalized terms used but not otherwise defined herein shall have the meanings set forth in the Interim Order. To the extent there are any conflicts between this summary and the Interim Order, the terms of the Interim Order shall govern.

such expenses become due and payable in the ordinary course of business, <u>provided</u> that the Prepetition Secured Parties are granted adequate protection as set forth in the Interim Order. Interim Order, ¶ 6.

(iii) <u>Specified Period</u>. Under the proposed Interim Order, the Debtor shall be authorized to use Cash Collateral until the occurrence of any of the following events (the "<u>Termination Events</u>")

(a) May 13, 2011, except with the prior written consent of the Security Trustee or by further order of this Court;
(b) Non-compliance by the Debtor with any of the express terms and/or provisions of the Interim Order and expiration of two (2) business days after written notice from the Agent;
(c) The conversion of this Chapter 11 Case to a case under chapter 7 of the Bankruptcy Code or the appointment of a trustee or examiner;
(d) Entry of an order by the Bankruptcy Court dismissing the Debtor's Case;
(e) Entry of an order by the Bankruptcy Court approving the sale of the Vessel or any substantial portion thereof;
(f) Unless the Bankruptcy Court orders otherwise, the reversal, vacatur, stay, amendment, supplementation or other modification of the Interim Order in a manner which shall materially and adversely affect the rights of the Agent, the Security Trustee or the Prepetition Secured Lenders under the Interim Order, or shall materially and adversely affect the priority of any or all of the Agent's, the Security Trustee's and the Prepetition Secured Parties' security interests in the Prepetition Collateral and/or the Collateral;
(g) The Debtor's filing of a motion seeking to obtain priority for liens securing obligations other than as set forth in the Interim Order, including any post-petition financing to which the Agent does not consent; or
(h) Entry of an order by the Bankruptcy Court permitting the use of the Prepetition Secured Lenders' Cash Collateral inconsistent with the terms of the Interim Order.

Interim Order, ¶ 12.

(iv) <u>Adequate Protection</u>. The Interim Order provides the Prepetition Secured Parties adequate protection of their respective interests in the Prepetition Collateral, including the Cash Collateral, for and equal in amount to the aggregate diminution in the value of the Prepetition Secured Parties' interests in the Prepetition Collateral occurring on or after the Petition Date, including, without limitation, any such diminution resulting from (i) the sale, lease or use by the Debtor (or other decline in value from depreciation or decline in market price) of Cash Collateral and any other Prepetition Collateral and (ii) the imposition of the automatic stay pursuant to section 362 of the Bankruptcy Code. As adequate protection,

-3-

the Security Trustee (for its benefit and the benefit of all Prepetition Secured Parties) shall be granted the following (collectively, the "Adequate Protection Obligations"):

(a) Section 507(b) Claim. Subject to the Carve Out, an allowed superpriority claim as provided for in section 507(b) of the Bankruptcy Code, with priority in payment over any and all administrative expenses of the kinds specified or ordered under any provisions of the Bankruptcy Code, including sections 105, 326, 328, 330, 331, 503, 507(a), 726, 1113 or 1114 of the Bankruptcy Code (the "507(b) Claim"). The 507(b) Claim shall not be payable from, or have recourse to, the Avoidance Recoveries. For purposes hereof, the "Carve Out" means (i) all fees required to be paid to the Clerk of the Bankruptcy Court and to the Office or the United States Trustee under section 1930(a) of title 28 of the United States Code, plus (ii) the reasonable fees and expenses of retained professionals of the Debtor employed pursuant to sections 327 or 328 of the Bankruptcy Code (other than ordinary course professionals) incurred on or after the Petition Date in an amount not to exceed, without prior written consent of the Security Trustee, the total sum of $25,000.

(b) Adequate Protection Liens. A replacement security interest and an additional security interest in and lien (the "Adequate Protection Liens") upon all assets and property of the Debtor of any kind or nature whatsoever, now owned or hereafter acquired, and all proceeds, rents, products, or profits thereof, and all proceeds of such proceeds, rents, products, and profits (collectively, the "Collateral"), subject to and subordinate only to the Carve Out and any prepetition liens and security interests that are senior in priority to the Prepetition Liens that are valid, perfected and not subject to avoidance (the "Priority Prepetition Liens"). The Adequate Protection Liens shall not be (A) subject or subordinate to (x) any lien or security interest that is avoided and preserved for the benefit of the Debtor and the Debtor's estate under section 551 of the Bankruptcy Code or (y) any liens arising after the Petition Date including, without limitation, subject to and effective upon entry of a Final Order, any liens or security interests granted in favor of any federal, state, municipal or other governmental unit, commission, board or court for any liability of the Debtor or (B) subordinated to or made *pari passu* with any other lien or security interest under sections 363 or 364 of the Bankruptcy Code or otherwise.

(c) Fees and Expenses. Cash payment of all accrued and unpaid fees of the Agent and the Security Trustee (including the reasonable fees and disbursements of counsel and other professional advisors for

the Agent and the Security Trustee, with copies to be provided to the Office of the United States Trustee and the Court to retain jurisdiction to consider) and disbursements incurred prior to the Petition Date owing under the Existing Agreements, in the amount set forth in the Budget and all without the necessity of filing any fee application or any other application with this Court; provided, however, that any accrued and unpaid fees or interest for which the Agent and/or the Security Trustee does not seek payment on or prior to April 28, 2011 or any time thereafter shall not be waived, and the Agent and/or Security Trustee's right to recover such unpaid fees or interest is hereby reserved.

(d) <u>Monitoring.</u> The Debtor shall provide the Agent and the Security Trustee copies of all statements, projections, reports and other materials related to the operation of the Debtor's business or the Collateral as may be reasonably requested by the Agent.

(e) <u>Chief Restructuring Officer.</u> The Debtor shall appoint a Chief Restructuring Officer (the "<u>CRO</u>") acceptable to the Agent, in the Agent's sole and absolute discretion, by a date to be set forth in the Interim Order. The CRO shall be appointed for the purposes of, among other things, implementing and effectuating an orderly process for the marketing and sale of the Vessel, and consummating such sale.

Interim Order ¶ 7.

4. Moreover, in addition to the aforementioned summary of the Debtor's proposed use of the Cash Collateral, in accordance with Local Rule 4001-2(a)(i), the Debtor highlights the following:

(A) <u>Cross-collateralization Protection</u>. The Interim Order provides no cross-collateralization protection other than replacement liens and other adequate protection.

(B) <u>Determination of Validity, Enforceability, Priority, and Amount of the Prepetition Liens</u>. The Interim Order provides that the stipulations, admissions, releases and waivers contained in ¶ 4 of the Interim Order (collectively, the "<u>Lien and Claim Perfection Matters</u>") shall be binding upon the Debtor and any successor thereto (including, without limitation, any chapter 7 or chapter 11 trustee appointed or elected for the Debtor) under all circumstances and for all purposes and shall be binding upon all other parties in interest, unless (a) a party in interest having standing has timely filed an adversary proceeding or contested matter (subject to the limitations contained in paragraph 15 of the Interim Order) by no later than the date that is sixty (60) days after the entry of the Interim Order (as

-5-

such date may be extended by an order of the Court that is entered on the docket within the 60 day deadline, and not by a bridge order, for "cause shown"), (i) challenging the validity, enforceability, allowability, priority or extent of the Prepetition Lien Obligations or the Prepetition Secured Parties' liens on the Prepetition Collateral or (ii) otherwise asserting any claims or causes of action against the any of the Prepetition Secured Parties on behalf of the Debtor's estate and (b) the Court rules in favor of the party in interest having standing in any such timely filed adversary proceeding or contested matter.

If no such adversary proceeding or contested matter is timely filed or the Court does not rule in favor of the party in interest having standing in any such proceeding, the Debtor's admissions, stipulations and releases contained in paragraph 4 of the Interim Order shall be binding on any and all parties-in-interest, without limitation, any successor to the Debtor (including, without limitation, any chapter 7 or 11 trustee or examiner appointed or elected for the Debtor). If any such adversary proceeding or contested matter is properly filed as of such dates, the Debtor's admissions, stipulations and releases contained in paragraph 4 of the Interim Order shall nonetheless remain binding and preclusive except to the extent that such admissions and releases were expressly challenged in such adversary proceeding or contested matter. This provision is a condition of the Prepetition Secured Parties to the Debtor's proposed use of Cash Collateral.

(C) <u>Waiver of Bankruptcy Code Section 506(c)</u>. The Interim Order provides no waiver of Bankruptcy Code section 506(c). The Final Order will seek such waiver.

(D) <u>Liens on Avoidance Actions</u>. The Interim Order provides that the Agent and the Security Trustee shall be entitled to bring a motion to request that the Collateral include any avoidance power claims or actions under chapter 5 of the Bankruptcy Code and any proceeds thereof (collectively, the "<u>Avoidance Recoveries</u>").

(E) <u>Deemed Postpetition Debt</u>. The Interim Order deems no prepetition secured debt to be postpetition debt nor seeks to incur any postpetition loan.

(F) <u>Disparate Treatment of Professionals</u>. The Carve Out provided for in the Interim Order only applies to the professionals retained by the Debtor, and does not include professionals retained by any committee.

(G) <u>Priming of Secured Lien</u>. The Adequate Protection Liens granted in the Interim Order prime no prepetition liens or security interests that are senior in priority to the Prepetition Liens; provided that such liens or

security interests are otherwise valid, perfected and not subject to avoidance.

## BACKGROUND

### A. Introduction

5. On April 25, 2011 (the "Petition Date"), the Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code (the "Chapter 11 Case"). The Debtor is operating its business and managing its properties as a debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No trustee, examiner or statutory committee has yet been appointed in this Chapter 11 Case.

### B. Overview of the Debtor's Business

6. The Debtor, a Delaware limited liability company, owns an oil drilling vessel named Peregrine I under official number 731983, flying the flag of, and registered in, the Bahamas (the "Vessel"). Rather than managing its operations itself, the Debtor has contracted its day-to-day management out to certain third parties. The Debtor's manager is PE-Cayman Inc. ("PE-Cayman"), which manages the Debtor pursuant to a Management Services Agreement (the "MSA"), dated November 19, 2009, between the Debtor and PE-Cayman. PE-Cayman subcontracts certain administrative services to Purenergy Management Services, LLC ("Purenergy") pursuant to a Subcontract for Administrative Services, also dated November 19, 2009, between PE-Cayman and Purenergy. Purenergy's obligations under the Subcontract for Administrative Services include maintenance of the Debtor's books and records, providing annual budgeting services, preparing annual financial statements and otherwise complying with PE-Cayman's obligations under the MSA.

7.     The Debtor also contracts with an independent, non-affiliated third party, Etesco Drilling Company B.V. ("Etesco"),[3] for the day-to-day operation of the Vessel pursuant to an Operating Agreement, dated November 16, 2007 (as amended, the "Operating Agreement"), between the Debtor and Etesco. Etesco, in turn, has entered into two agreements with Petroleo Brasileiro S.A. ("Petrobras"), a charter contract (the "Petrobras Charter") and a services agreement (the "Petrobras Services Agreement"), pursuant to which Petrobras pays Etesco a fee for chartering the Vessel and certain additional amounts to cover operating expenses. All amounts due to Etesco under the Petrobras Charter, minus a small portion set aside for operating expenses, are delivered directly into a "lockbox" for the benefit of the Debtor's Prepetition Secured Parties (as defined below). 100% of the revenues of the Vessel are generated from the Petrobras Charter.

8.     In summary, the Debtor is the owner of the Vessel but neither manages nor is in charge of the day-to-day operations of the Vessel. PE-Cayman and Purenergy manage the Debtor, while Etesco operates the Vessel. The Debtor itself has no employees; the employees that staff and secure the Vessel all work for Etesco, with 100% of the Debtor's revenues arising from the Petrobras Charter between Etesco and Petrobras.

C.    **The Debtor's Prepetition Capital Structure**

9.     Prepetition Credit Facility. The Debtor is a borrower under a $258,750,000 term loan credit facility (the "Prepetition Facility") pursuant to a Facilities Agreement, dated November 19, 2007 (as amended, the "Prepetition Credit Agreement"), among the Debtor party thereto, GE Capital Markets Inc. and WestLB AG, New York Branch as mandated lead arranger, those certain lenders party thereto (the "Secured Lenders"), WestLB

---

[3] Etesco is *not* an affiliate of the Debtor or of Purenergy.

-8-

RLF1 3990744v. 5

AG, New York Branch as facility agent (in such capacity under the Facilities Agreement, the "Agent") for the Secured Lenders, and WestLB AG, New York Branch as security trustee (in such capacity under the Facilities Agreement, the "Security Trustee" and, together with the Agent and the Secured Lenders and all other Secured Parties under or pursuant to the Finance Documents, the "Prepetition Secured Parties"). The Prepetition Facility is secured by security interests in and liens on (the "Prepetition Liens") substantially all of the Debtor's existing and after-acquired assets, including the Vessel, which is the principal asset of the Debtor (collectively, the "Prepetition Collateral" and all such collateral, to the extent constituting "cash collateral" as defined in section 363(a) of the Bankruptcy Code, "Cash Collateral"). As of the Petition Date, there was approximately $189,973,592 outstanding principal balance, plus accrued interest and swap claim amounts, under the Prepetition Facility (the "Prepetition Obligations"). The Debtor believes the value of the Vessel is less than the amount of the Prepetition Obligations.

### D. Events Leading to the Debtor's Bankruptcy Filing

10. Shortly after the Vessel was acquired by the Debtor in 2007, certain mechanical issues arose that threatened the operation of the Vessel and impaired its ability to operate under the Petrobras Charter. After being repaired, the Vessel was returned to active drilling off the coast of Brazil. Recently, however, additional operational issues related to the Vessel's thrusters have arisen and have required Etesco to take the Vessel off-line. As 100% of the Debtor's ability to service the Prepetition Obligations comes from amounts that it receives from payments made by Petrobras under the Petrobras Charter, the Debtor soon found itself unable to service the Prepetition Facility.

11. Prior to the Petition Date, the Debtor was unable to obtain additional financing or investments to bring the Vessel back into operation. Etesco had also threatened to terminate the Operating Agreement as of April 26, 2011. Thus, facing both financial distress and demands from Etesco, the Debtor filed this Chapter 11 Case on the Petition Date.

## RELIEF REQUESTED

12. This Motion is brought on an emergency basis in light of the immediate and irreparable harm that will be suffered by the Debtor's estate if the proposed use of Cash Collateral is not approved. Under the terms of the Interim Order, the Debtor is not asking the Court to make a finding that any particular funds constitute Cash Collateral; indeed, the Agent, the Security Trustee and the Prepetition Secured Parties have informed the Debtor that they reserve the right (and do not waive) to argue that any amounts to be treated as Cash Collateral under the terms of the Cash Collateral Orders do not, in fact, constitute Cash Collateral and instead are the sole property of the Security Trustee for the benefit of the Prepetition Secured Parties. As will be set forth in the Hanlon Affidavit, the Debtor currently has sufficient cash to preserve and secure the safety of the Vessel, but all such cash is subject to the Prepetition Liens of the Security Trustee. Accordingly, the Debtor does not have access to unencumbered cash or other liquid assets with which to meet the obligations of ensuring the safety of the Vessel during the Chapter 11 Case and to fund the costs of administration of the Chapter 11 Case. The Debtor, instead, requires the use of Cash Collateral of the Security Trustee to pay its ordinary course expenses and other costs of administration of the Chapter 11 Case.

13. Without the proposed relief, the Debtor's ability to preserve its value as a going concern and to secure the safety of the Vessel may be jeopardized to the material detriment of its creditors and other parties-in-interest. The Debtor is in the process of formulating a budget

RLF1 3990744v. 5

(the "Budget")[4] of its anticipated cash needs for the period from the Petition Date through May 13, 2011, and seeks authority to use Cash Collateral in accordance with the Budget.

## ARGUMENT

### A. The Use of Cash Collateral is Warranted and Should Be Approved

14. Pursuant to section 363(c)(2) of the Bankruptcy Code, a debtor may not use cash collateral unless "(A) each entity that has an interest in such cash collateral consents; or (B) the court, after notice and a hearing, authorizes such use, sale, or lease in accordance with the provisions of this section." 11 U.S.C. § 363(c)(2).

15. As set forth above, the use of Cash Collateral is necessary for ordinary course operating costs and expenses at the outset of, and during, the Chapter 11 Case and to secure the safety of the Vessel. The Debtor does not have available sources of working capital and financing to carry on the operation of its business during the Chapter 11 Case or to secure the safety of the Vessel without the use of Cash Collateral. The use of Cash Collateral is therefore critical to the preservation and maintenance of the going concern value of the Debtor, as well as the value of the Vessel, the sole principal asset of the Debtor. Additionally, the Security Trustee has consented to the use of Cash Collateral in accordance with the Budget, provided that the Court approves the adequate protection provided in the Interim Order.

### B. The Proposed Adequate Protection Should Be Approved

16. Section 363(e) of the Bankruptcy Code provides that, "on request of an entity that has an interest in property used . . . or proposed to be used by a debtor in possession, the court . . . shall prohibit or condition such use . . . as is necessary to provide adequate protection of such interest." 11 U.S.C. § 363(e). The principal purpose of adequate protection is

---

[4] A copy of the Budget will be filed with the Court prior to the interim hearing on the Motion once it is finalized.

to safeguard the secured creditor against diminution in the value of its interests in the collateral. See In re Continental Airlines, Inc., 154 B.R. 176, 180 (Bankr. D. Del. 1993) (stating that goal of adequate protection is to safeguard secured creditor from diminution in value of its interest during chapter 11 process); accord In re 495 Central Park Avenue Corp., 136 B.R. 626, 631 (Bankr. S.D.N.Y. 1992) (same); In re Beker Indus. Corp., 58 B.R. 725, 737 (Bankr. S.D.N.Y. 1986) (same). As noted above, courts may require adequate protection in circumstances where the secured creditor does not consent. See, e.g., In re Westport Sandpiper Assocs., 116 B.R. 355, 357 (Bankr. D. Conn. 1990).

17. The means by which adequate protection is provided are specified in section 361 of the Bankruptcy Code. Section 361 sets forth three non-exclusive forms of adequate protection: (a) lump sum cash payments to the extent that use of property results in a diminution in value of an entity's interest in property; (b) provision of additional or replacement liens to the extent that use of property results in a diminution in value of an entity's interest in property; and (c) such other relief as will result in an entity realizing the indubitable equivalent of its interest in property. 11 U.S.C. § 361.

18. As the foregoing list is neither exclusive nor exhaustive, there is a great deal of flexibility in terms of what may constitute adequate protection. In re O'Connor, 808 F.2d 1393, 1396-97 (10th Cir. 1987). Ultimately, adequate protection is determined on a case-by-case basis in light of the particular facts and circumstances presented. Id. (stating that "the courts have considered 'adequate protection' a concept which is to be decided flexibly on the proverbial 'case-by-case' basis"); 495 Central Park, 136 B.R. at 631 (stating that although section 361 presents some specific illustrations of adequate protection, the statute is not exclusive and suggests a broad and flexible definition); Pagano v. Cooper (In re Cooper), 22 B.R. 718, 720 n.3

(Bankr. E.D. Pa. 1982) ("While adequate protection is not defined in the Bankruptcy Code, the legislative history of § 361 reflects the intent of Congress to give the courts the flexibility to fashion the relief in light of the facts of each case and general equitable principles.") (citing H.R. REP. NO. 95-595).

19. The Debtor proposes to grant the Prepetition Secured Parties the adequate protection as described in paragraph 3(iv) above. The proposed adequate protection to be provided by the Debtor to the Prepetition Secured Parties is appropriate. The Prepetition Secured Parties are receiving the Adequate Protection Liens and the 507(b) Claim as well as the other Adequate Protection Obligations to adequately protect against the diminution of the value of the Prepetition Collateral. The proposed adequate protection will sufficiently protect the Prepetition Secured Parties' interests in the Cash Collateral. Accordingly, the proposed adequate protection is fair and reasonable and sufficient to satisfy the requirement of section 363(c)(2) of the Bankruptcy Code.

## INTERIM APPROVAL SHOULD BE GRANTED

20. Pending the Final Hearing, the Debtor seeks use of Cash Collateral for, among other things, the purchase of services required to ensure the safety and security of the Vessel and other working capital needs. The Debtor's emergency request represents the minimum amount of cash necessary for such purposes during the period prior to the Final Hearing on this Motion. It is essential that the Debtor have access to liquidity to maintain the Vessel and preserve and enhance the value of its assets.

21. Bankruptcy Rule 4001(b) permits a court to approve a debtor's request for use of cash collateral during the 14-day period following the filing of a Motion requesting authorization to use cash collateral only to the extent "necessary to avoid immediate and irreparable harm to the estate pending a final hearing." Fed. R. Bankr. P. 4001(b)(2). In

examining requests for interim relief under this rule, courts apply the same business judgment standard applicable to other business decisions. See In re Simasko Prods. Co., 47 B.R. 444, 449 (Bankr. D. Colo. 1985). After the 14-day period, the request for financing is not limited to those amounts necessary to prevent destruction of the debtor's business; rather, a debtor is entitled to borrow those amounts that it believes prudent in the operation of its business. Id. Under this standard, and given the Debtor's urgent and immediate cash needs, the Debtor submits that entry of the Cash Collateral Orders, in the time periods, and for the amounts requested herein, is appropriate.

22. For the reasons stated above, the Debtor respectfully requests that the Court grant the relief requested herein.

## NOTICE

23. Notice of this Motion has been given via facsimile, hand delivery, electronic mail, or overnight mail to: (i) the Office of the United States Trustee, (ii) counsel to the Agent and Prepetition Security Trustee, (iii) the Debtor's twenty largest unsecured creditors, (iv) the Internal Revenue Service, (v) local taxing authorities, and (vi) all parties that have filed a request for notice under Bankruptcy Rule 2002. Because of the exigencies of the circumstances and the irreparable harm to the Debtor, its estate, and all parties-in-interest that will result if the relief requested herein is not granted, the Debtor submits that no other notice need be given.

24. No prior Motion for the relief requested herein has been made to this or any other Court.

RLF1 3990744v. 5

WHEREFORE, the Debtor respectfully requests that the Court: (i) enter the Interim Order, substantially in the form attached hereto as <u>Exhibit A</u>, (ii) at the Final Hearing, enter the Final Order authorizing use of Cash Collateral on a final basis, and (iii) grant such other and further relief as may be just and proper.

Dated: May 3, 2011
       Wilmington, Delaware

Respectfully submitted,

RICHARDS, LAYTON & FINGER, P.A.

*/s/ Katherine Good*

Russell C. Silberglied (No. 3462)
John H. Knight (No. 3848)
L. Katherine Good (No. 5101)
One Rodney Square
920 North King Street
Wilmington, Delaware 19801
Telephone: (302) 651-7700
Facsimile: (302) 651-7701

- and -

LATHAM & WATKINS LLP
Keith A. Simon
Jude Gorman
885 Third Avenue
New York, New York 10022-4834
Telephone: (212) 906-1372
Facsimile: (212) 751-4864


Proposed Counsel to the
Debtor and Debtor-in-Possession